# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LARON ARMSTEAD, ) | |
|     *Plaintiff*, ) | Case No. 21-CV-05414 |
| ) | |
| v. ) | Judge |
| ) | |
| JB HUNT TRANSPORT, INC., ) | |
| a Corporation, ) | **JURY TRIAL DEMANDED** |
|     *Defendant*. ) | |

## COMPLAINT

Plaintiff, LaRon Armstead, by and through his attorneys, complains of Defendant, JB Hunt Transport, Inc., a corporation, as follows:

## NATURE OF ACTION

1. This is an action brought under 42 U.S.C. §1981, Title VII, and the Illinois Human Rights Act to redress racial discrimination in the workplace and to enjoin Defendant from continuing to engage in unlawful employment practices and affirmatively institute and carry out policies and practices to provide equal employment opportunities for all and to prevent discrimination. Plaintiff, a former employee of Defendant, was subjected to disparate treatment when he applied for multiple promotions which were all denied on account of his race, African American, and were given to less qualified, non-African American employees. Additionally, Plaintiff brings claims sounding in breach of contract, promissory estoppel, and in violation of the Illinois Wage Payment Collection Act, for Defendant's refusal to pay Plaintiff an offered and accepted promise of a raise, made in response to Plaintiff's complaints.

## JURISDICTION, VENUE & PARTIES

2. Federal question jurisdiction is based upon 28 U.S.C. §1331; supplemental jurisdiction is based upon 28 U.S.C. §1367(a).

3. Plaintiff has complied with all administrative prerequisites by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). Plaintiff has received from the EEOC his right to sue and will request the same from the IDHR.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to this action occurred within this judicial district.

5. Plaintiff, LaRon Armstead (hereinafter "Plaintiff"), is an African-American male citizen and resident of the State of Illinois who was formerly employed by Defendant at one of its locations in Chicago, Illinois.

6. Defendant, JB Hunt Transport, Inc. (hereinafter "Defendant"), is a Georgia corporation registered with the State of Illinois that regularly conducts business throughout the State of Illinois, including in Cook County.

7. At all relevant times, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act.

## FACTUAL ALLEGATIONS

*Repeatedly Passed Over for Promotion:*

8. Plaintiff, an African American male, began working for Defendant in April of 2013 as a fleet manager.

9. At the time of his separation from employment with Defendant in March of 2021, Plaintiff was one of the most senior fleet managers with the most leadership experience.

10. During his time working for Defendant, Plaintiff had an excellent performance record, with no noted discipline. Plaintiff was awarded many honors during his time working for Defendant including: 2018 Fleet Manager of the Quarter, 2018 Fleet Manager of the Year, and Safest Board of the 2018 Year. Plaintiff was the only manager ever awarded both the Manager of the Year and Safest Board of the Year in the same year

11. Plaintiff applied for a promotion to logistics planner in 2014.

12. Plaintiff was interviewed but was not chosen for the promotion. Defendant promoted a non-African-American instead.

13. Plaintiff was told the reason he was not chosen was that they wanted someone that could relocate even though it was not part of the job description.

14. In or around 2014, Plaintiff was working the overnight shift from 7 PM to 5 AM.

15. In January of 2015, Plaintiff's supervisor, Andrew Burkemper (Caucasian), encouraged Plaintiff to move to a more daytime shift (1 AM to 11 AM), stressing he was more likely to be promoted if the daytime operations managers were able to see the leadership abilities he possessed. Mr. Burkemper estimated Plaintiff would be promoted within one year if he moved to the daytime shift.

16. Plaintiff was told he was not "visible" enough in his overnight shift to gain a promotion.

17. Plaintiff agreed to move to a new shift to have a better opportunity to be promoted.

18. Within six months of switching to a new shift, Plaintiff's non-African American replacement on the overnight 7 PM to 5 AM shift was promoted to logistics planner.

19. In 2016, Plaintiff again applied for a promotion to logistics planner. With his additional years of experience, Plaintiff was one of the most veteran fleet managers.

20. Plaintiff was interviewed but, again, was not chosen for the promotion.

21. Again, Defendant promoted a non-African-American to this position, instead of Plaintiff.

22. This time, Plaintiff was told the reason he was not chosen was because the non-African American who got the promotion, and who had less time with the company than Plaintiff, had asked better questions in his interview than Plaintiff.

23. Plaintiff later learned that non-African American employees were coached on the interview questions in preparation for the interview.

24. Plaintiff complained to Ken Miller, the Vice President of Operations, and discussed being passed over for promotions, to which Mr. Miller responded, "no one would have chosen to promote you."

25. Shortly thereafter Defendant opened up another promotional position, but this time Defendant did not even give Plaintiff the opportunity to interview for the position.

26. Instead, Defendant directly promoted an employee with a year and a half less experience than Plaintiff to that position, without offering additional interviews.

27. A brief time later, Defendant created a new Human Resources manager position, which position could be a promotion for Plaintiff, and which position Plaintiff applied for and was interviewed.

28. Plaintiff was not offered a second-round interview, however, and the promotion was yet again given to a non-African American employee; this time to an employee on Plaintiff's team, who had only been a fleet manager for nine months at the time.

29. The HR promotion opened again in late 2019, which opening Plaintiff again applied for but was never even given an interview.

30. Later, in October of 2019, Plaintiff applied for a logistics planner promotion again but was, once again, passed over for a non-African American employee; this one with only two years' experience.

31. Around the end of 2019/beginning of 2020, another planning promotion was opened up and the employees were told that the best interviews from the previous rounds would be given a second interview; Plaintiff was not given a second interview despite being told previously he was the second best interview for the October opening.

32. The promotion was once again filled by a non-African American employee with less than two years' experience.

*Contract for Raise:*

33. In or around June of 2018, Plaintiff spoke to his Director, Shane O'Connor, and requested a raise to reflect his seniority in the office; at the time, Plaintiff, not considering his shift differential, was making about the same rate as newly hired fleet managers with no experience while he had five years' experience.

34. Plaintiff repeatedly followed up on his request to Mr. O'Connor but was never given a direct answer.

35. In March of 2019, Plaintiff was finally told by Mr. O'Connor he was not given a raise because it was felt one of his performance metrics, the phone call answer percentage, was low.

36. Mr. O'Connor also told Plaintiff he did not receive the requested raise because Mr. O'Connor felt the raises should go to the employees who are happy with their jobs, and in his opinion Plaintiff was not happy in his job; Plaintiff responded he wasn't happy because he was being continually passed over for promotion despite his accolades and awards.

5

37. However, another employee, who had quit her job with Defendant explicitly because she was unhappy, but then came back, was promoted less than a year after her return.

38. Finally, in January 2020, Defendant offered to give Plaintiff a 6% raise as compensation for his seniority in the office. Plaintiff was to receive a 3.5% increase up front and then an additional 2.5% would be applied once Plaintiff raised his phone call answer metrics to 80%.

39. Plaintiff accepted the offer, stayed with Defendant, and immediately began performing and working to improve the metric.

40. It was quickly discovered, however, that his phone answer percentages were actually being miscalculated due to his odd work hours and because, unlike others in his position, he had two phones to manage. Thus, Defendant had not been giving Plaintiff accurate percentages of his call performance.

41. By the first week in March 2020, Plaintiff's call answer percentage had surpassed 80% and averaged 90% for the remainder of his employment.

42. Plaintiff asked for the additional 2.5% raise that he had been promised since he had met the conditions of the offer.

43. Defendant agreed that Plaintiff had performed, meeting and surpassing the required metric agreed upon.

44. However, Plaintiff was told that Defendant was considering not paying him the earned 2.5% salary increase because it had concerns about the Covid-19 pandemic.

45. Defendant requested to modify the agreement, proposing to provide only a 1% increase, instead of the agreed upon 2.5%; Plaintiff rejected the proposal to modify the agreement.

46. Defendant never paid the additional and contracted 2.5% increase owed to Plaintiff for the rest of his employment or at any time thereafter.

47. Having been repeatedly passed over for promotions in favor of less qualified non-African-American candidates and learning Defendant was not going to pay him the raise it promised, even after he had fully performed his part of the agreement, Plaintiff could take no more and resigned his employment with Defendant in March of 2021.

## COUNT I
## RACE DISCRIMINATION ~ 42 U.S.C. §1981

48. Plaintiff re-alleges paragraphs 1 through 47 and incorporates them as though fully set forth herein.

49. 42 U.S.C. §1981 makes it unlawful to discriminate against any person in the terms and privileges of employment or to take any adverse action on account of race.

50. By its conduct as alleged herein, Defendant discriminated against Plaintiff on account of his race.

51. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from race discrimination.

52. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm, and humiliation.

53. Plaintiff demands to exercise his right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant on Count I and that it:

    a) Declare that Defendant's conduct was in violation of 42 U.S.C. §1981;

    b) Award Plaintiff the value of all actual damages to be proved at trial, including but not limited to, the value of all compensation, benefits, and

        other actual damages Plaintiff has lost and will continue to lose;

c)     Award Plaintiff damages for emotional distress and compensatory damages;

d)     Award Plaintiff punitive damages;

e)     Award Plaintiff reasonable attorney's fees, costs and disbursements;

f)     Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

g)     Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

h)     Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT II
## RACE DISCRIMINATION ~ TITLE VII

54.     Plaintiff realleges Paragraphs 1 through 47 and incorporates them as though fully set forth herein.

55.     Title VII, as amended by the Civil Rights Act of 1991, makes it unlawful to "discharge any individual, or otherwise discriminate" against any individual "because of such individual's" race. 42 U.S.C. 2000e, et seq.

56.     By its conduct as alleged herein, Defendant discriminated against Plaintiff on account of his race in violation of Title VII.

57.     Plaintiff is a member of a protected group based on his race (African American).

58.     Defendant treated Plaintiff less favorably than similarly situated employees who are not African American.

59.     Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard

of Plaintiff's right to be free from race discrimination.

60. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm, and humiliation.

61. Plaintiff demands to exercise his right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in his favor and against Defendant on Count II as follows:

a) Declare that Defendant's conduct was in violation of Title VII of the Civil Rights Act, as amended;

b) Award Plaintiff the value of all actual damages to be proved at trial, including but not limited to, the value of all compensation, benefits, and other actual damages Plaintiff has lost and will continue to lose;

c) Award Plaintiff damages for emotional distress and compensatory damages;

d) Award Plaintiff punitive damages;

e) Award Plaintiff reasonable attorney's fees, costs and disbursements;

f) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

g) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

h) Award Plaintiff any and all other relief as the Court deems just in the premises.

# COUNT III
## RACE DISCRIMINATION ~ ILLINOIS HUMAN RIGHTS ACT

62. Plaintiff realleges Paragraphs 1 through 47 and incorporates them as though fully set forth herein.

63. The Illinois Human Rights Act makes it unlawful for an employer to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

64. By its conduct as alleged herein, Defendant discriminated against Plaintiff on account of his race in violation of the Illinois Human Rights Act.

65. Plaintiff is a member of a protected group based on his race (African American).

66. Defendant treated Plaintiff less favorably than similarly situated employees who are not African American.

67. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm, and humiliation.

68. Plaintiff demands to exercise his right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in his favor and against Defendant on Count III as follows:

    a) Declare that Defendant's conduct was in violation of the Illinois Human Rights Act;

    b) Award Plaintiff the value of all actual damages to be proved at trial, including but not limited to, the value of all compensation, benefits, and other actual damages Plaintiff has lost and will continue to lose;

    c) Award Plaintiff damages for emotional distress and compensatory damages;

    d) Award Plaintiff punitive damages;

    e) Award Plaintiff reasonable attorney's fees, costs and disbursements;

    f)    Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

    g)    Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

    h)    Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT IV
## ILLINOIS WAGE PAYMENT AND COLLECTION ACT

69. Plaintiff realleges Paragraphs 1 through 47 and incorporates them as though fully set forth herein.

70. At all times hereto, there was in full force and effect in the State of Illinois a statute called the Illinois Wage Payment and Collection Act ("IWPCA") [820 ILCS 115/1, et seq.], which states in relevant part:

> "wages" shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation. Payments to separated employees shall be termed "final compensation" and shall be defined as wages, salaries, … and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties. [820 ILCS 115/2]

71. At all times relevant, Plaintiff was an "employee" within the definition of §2 of the IWPCA [820 ILCS 115/2].

72. At all times relevant, Defendant was an "employer" within the definition of §2 of the IWPCA [820 ILCS 115/2].

73. Defendant's offer and Plaintiff's acceptance of the 6% raise, with an initial and immediate increase of 3.5% and the promise of an additional 2.5% increase once Plaintiff performed by meeting certain performance metrics, constitutes an "employment contract or agreement" for purposes of the IWPCA.

74. Plaintiff performed all conditions precedent of that contract or agreement.

75. The amounts represented by the raise Defendant was to pay to Plaintiff under the agreement were earned "wages" and "final compensation" for purposes of the IWPCA.

76. Defendant's failure and refusal to pay Plaintiff his earned wages and final compensation violated the IWPCA and subjects Defendant to the penalties of the statute, 820 ILCS 115/14.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in his favor and against Defendant, on Count IV as follows:

a) In the amount shown to be due him for Defendant's failure to timely pay his earned wages and final compensation; plus

b) 5% of the amount of any such underpayment for each month following the date of payment during which such underpayment remains unpaid, as provided by §14(a) of the IWPCA [820 ILCS 115/14(a)]; plus

c) Pre-judgment interest, as may be applicable on the amount shown to be due him; plus

d) The costs of this action, including his reasonable attorneys' fees pursuant to §14(a) of the IWPCA [820 ILCS 115/14(a)]; plus

e) Any and all additional or alternative relief to which Plaintiff may be entitled as the Court deems just in the premises.

## COUNT V
## BREACH OF CONTRACT

77. Plaintiff realleges Paragraphs 1 through 47 and incorporates them as though fully set forth herein.

78. Defendant offered to increase Plaintiff's salary of approximately $65,000 by 2.5% if he met certain performance metrics, which offer Plaintiff accepted.

79. Plaintiff performed all conditions precedent to his agreement with Defendant, quickly meeting and then exceeding the performance metrics on which Defendant conditioned the raise.

80. Defendant breached the contract it made with Plaintiff when it failed and refused to increase Plaintiff's salary by 2.5% once he met the performance metrics.

81. As a result of Defendant's breach Plaintiff has suffered monetary damages in the form of lost wages that should have been paid from March 2020 through March 2021.

**WHEREFORE**, Plaintiff respectfully prays this Honorable Court for judgment in his favor and against Defendant, and that this Honorable Court award damages to Plaintiff in an amount to be determined at trial, plus costs and interest, and for any additional or alternative relief to which he may be entitled as this Court deems just in the premises.

## COUNT VI
## PROMISSORY ESTOPPEL

82. Plaintiff realleges Paragraphs 1 through 47 and incorporates them as though fully set forth herein.

83. Defendant made a clear and definite promise to increase Plaintiff's salary by 6% with an initial and immediate increase of 3.5% and the promise of an additional 2.5% increase once Plaintiff performed by meeting certain performance metrics.

84. Defendant made the promises to Plaintiff with the expectation that Plaintiff would rely on those promises and continue to work for Defendant and increase his performance metrics.

85. Plaintiff reasonably relied on Defendant's promise to make the additional 2.5% increase and chose to remain employed with Defendant for approximately another 12 months until it became clear Defendant would not honor the promise it made to him.

86. Plaintiff has suffered significant and definite detriment as a result of his reliance on Defendant's promise by continuing his employment and thus foregoing other employment opportunities.

**WHEREFORE**, Plaintiff respectfully prays this Honorable Court for judgment in his favor and against Defendant, and that this Honorable Court award damages to Plaintiff in an amount to be determined at trial, plus costs and interest, and for any additional or alternative relief to which he may be entitled as this Court deems just in the premises.

          Respectfully submitted,
          LARON ARMSTEAD

By:   s/ Katherine D. Ellis
       Attorney for the Plaintiff

John P. Madden
Katherine D. Ellis
O'Malley & Madden, P.C.
542 So. Dearborn Street, Suite 660
Chicago, Illinois 60605
(312) 697-1382
jmadden@ompc-law.com
kellis@ompc-law.com